EASTERN DISTRICT of KENTUCKY
TENDERED
DATE 12/16/14
ROBERT R. CARR
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL ACTION NO. 14-47-DLB

UNITED STATES OF AMERICA     PLAINTIFF

V.     **PLEA AGREEMENT**

JESSICA MILLER     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment, charging a violation of 21 U.S.C. § 846, Conspiracy to Distribute Heroin. Pursuant to Rule 11(c)(1)(A), the United States will move to dismiss Count 2 at sentencing.

2. The essential elements of Count 1 are:

   (a) The Defendant conspired with others to knowingly and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance; and

   (b) The Defendant knowingly and voluntarily joined the conspiracy.

3. As to Count 1, the Defendant acknowledges that the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits those facts of which she has personal knowledge:

   (a) In June 2014, the Northern Kentucky Drug Strike Force (NKDSF) received information about a heroin trafficking operation in Northern Kentucky

and Cincinnati. The informant advised that Alexis Sweigart obtained ounce quantities of heroin from a source in Cincinnati for sale in Northern Kentucky. The informant also advised that Sweigart was often accompanied by Eric Meade or a runner of Meade's, who would transport a portion of the heroin to Newark, Ohio (where Meade lived) for distribution. The Defendant was subsequently identified as one of Meade's runners, along with her husband, Joseph, Jennifer Trout, and Kira Stiles.

(b) On June 25, 2014, Trout and Stiles were stopped by the Central Ohio Drug Enforcement Task Force. Agents recovered 28 grams of heroin from Trout, and both she and Stiles admitted obtaining the heroin with Sweigart from a source in Cincinnati, Ohio on Meade's behalf. Trout also admitted being a courier of money and heroin for Meade.

(c) On August 15, 2014, the NKDSF received additional information that Sweigart was scheduled to pick up more heroin from her Cincinnati source. Agents followed Sweigart, who was accompanied by the Defendant and her husband, to an apartment in Cincinnati. On their way back to Northern Kentucky, agents conducted a traffic stop and recovered approximately 20 grams of heroin from Sweigart. All three subjects were interviewed. Sweigart acknowledged her role as a middleman for Eric Meade, as well as the fact that she distributed heroin to customers in Northern Kentucky. According to Sweigart, she assisted Meade in obtaining one ounce of heroin every week from her source in Cincinnati, for a period of approximately 6 months. Sweigart also admitted that she obtained 5-6 grams from the same source every day for a period of approximately 8 months for distribution. The Defendant and her husband likewise acknowledged their role as couriers for Meade.

(d) Meade was arrested on August 19 and admitted sending runners to Northern Kentucky to meet with Sweigart and obtain heroin for distribution.

(e) The Defendant admits making weekly or biweekly trips to Northern Kentucky to meet with Alexis Sweigart to obtain approximately 20 grams heroin, which she ultimately transported to Newark, Ohio for Eric Meade for distribution by him. The Defendant started making trips for Meade after Trout and Stiles were stopped on June 25.

4. The maximum statutory punishment for Count 1 is imprisonment for 20 years, a fine of $1,000,000, and a term of supervised release of 3 years. A mandatory special

assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), and unless otherwise noted below, the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2014, manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes, but is not limited to, the conduct listed in paragraph 3.

    (c) Pursuant to U.S.S.G. § 2D1.1(c)(8), the base offense level is 24 because the offense involved at least 100 grams but less than 400 grams of heroin.

    (d) It is the Defendant's position that, pursuant to U.S.S.G. § 3B1.2, the offense level should be decreased based on her role in the offense. The government reserves the right to contest any such reduction.

    (e) Pursuant to U.S.S.G. § 2D1.1(b)(16), *if* the Defendant meets the criteria set forth in § 5C1.2(a)(1)-(5), decrease the offense level by 2 levels.

    (f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea, conviction, and any sentence that is within or below the advisory Guideline range as finally determined by the

3

Court. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

    8. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. The Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

9. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

10. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

11. This document and the sealed supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

12. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

13. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

KERRY B. HARVEY
UNITED STATES ATTORNEY

Date: 12/16/14     By: *(signature)*
Elaine K. Leonhard
Assistant United States Attorney

Date: 12/16/14     *(signature)*
Jessica Miller
Defendant

Date: 12/16/2014     *(signature)*
Edward L. Metzger, III
Attorney for Defendant

**APPROVED**, this _____ day of _____, 2014.

_____
UNITED STATES DISTRICT JUDGE